# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-862

STATE OF LOUISIANA

VERSUS

ZORAN JOHNSON

************

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 13827
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

************

## DAVID E. CHATELAIN[*]
## JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and David E. Chatelain, Judges.

**AFFIRMED.**

**Van Hardin Kyzar**
**District Attorney**
**R. Stuart Wright**
**Assistant District Attorney**
**Post Office Box 838**
**Natchitoches, Louisiana  71458-0838**
**(318) 357-2214**
**Counsel for:**
        **State of Louisiana**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**W. Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, Louisiana  71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
      **Zoran Johnson**

**CHATELAIN, Judge Pro Tempore.**

The defendant, Zoran Johnson, appeals his convictions and sentences for illegal possession of a stolen firearm, a violation of La.R.S. 14:69.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. We affirm.

### FACTS

On January 5, 2008, the defendant was an occupant in a vehicle owned and driven by Cordero Palmer. On that date, Sergeant Travis Johnson of the Natchitoches Parish Police Department stopped the vehicle because one of its headlights was inoperative. Upon stopping the vehicle, Sergeant Johnson smelled the odor of burnt marijuana emanating from the vehicle. When Sergeant Johnson requested consent to search the vehicle, Mr. Palmer refused. Shortly thereafter, Detective Jessie Taitano arrived, and he also smelled marijuana at the passenger side of the vehicle. A K-9 dog, however, alerted officers to the passenger side door of the vehicle. Based upon these observations and the canine alert, the officers subsequently searched the vehicle. An AK-47 assault rifle was found underneath a jacket on the backseat of the vehicle. Thereafter, Sergeant Johnson determined that the firearm had been reported stolen, and both men were arrested.

On February 1, 2008, the defendant was charged by bill of information with illegal possession of a stolen firearm, a violation of La.R.S. 14:69.1, and with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. Following a jury trial held January 26, 2009, the defendant was found guilty as charged. On February 25, 2009, the trial court sentenced the defendant to serve five years at hard labor for illegal possession of a stolen firearm and to serve ten years at hard labor without benefit of parole, probation, or suspension of sentence for

1

possession of a firearm by a convicted felon. The sentences were ordered to run concurrently. The defendant did not file a motion to reconsider sentences.

The defendant is now before us, asserting that the evidence was insufficient to support his convictions and that his sentences are excessive.

## SUFFICIENCY OF THE EVIDENCE

The analysis for a claim of insufficient evidence is well-settled:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Sylvia*, 01-1406, p. 2 (La. 4/9/03), 845 So.2d 358, 361; *State v. Captville*, 448 So.2d 676, 678 (La.1984). Therefore, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proved beyond a reasonable doubt. *Sylvia*, 01-1406 at p. 2-3, 845 So.2d at 361; *Captville*, 448 So.2d at 678. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony; thus, a reviewing court may impinge on the "fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law." *Sylvia*, 01-1406 at p. 2-3, 845 So.2d at 361 (citing *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988)).

*State v. Johnson*, 03-1228, pp. 4-5 (La. 4/14/04), 870 So.2d 995, 998.

### *Possession of a Firearm by Convicted Felon*

The elements of the offense, possession of a firearm by a convicted felon, are found in La.R.S. 14:95.1, which reads, in pertinent part:

> A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of

any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

. . . .

C. Except as otherwise specifically provided, this Section shall not apply to the following cases:

(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.

Accordingly, for the defendant to be convicted of possession of a firearm by a convicted felon: "[T]he State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense." *State v. Recard*, 97-754, p. 9 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, 329, *writ denied*, 97-3187 (La. 5/1/98), 805 So.2d 200. Only general criminal intent must be proved. La.R.S. 14:95.1. "General criminal intent is present . . . when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S. 14:10(2). Although the existence of intent is a question of fact, it need not be proven as such and may be inferred from the circumstances of a transaction. *State v. Brown*, 42,188, 42,189, 42,190 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, *writ denied*, 07-2199 (La. 4/18/08), 978 So.2d 347.

The defendant first challenges the element of possession, contending that the State failed to show he was aware or knew the firearm was in the vehicle and that he had the general intent to possess it. The defendant's contentions are threefold: (1)

3

there was no testimony about who owned the jacket; (2) there were no fingerprints on the firearm; and (3) there was no assertion of ownership by himself or Mr. Palmer, the owner and driver of the car. He adds that there was no evidence that he knew the firearm was present in the vehicle or that he exercised any dominion or control over it. Lastly, he states that the firearm was concealed, so that upon entering the car, he would not have seen it, and that the officers did not discover the weapon until approximately ten minutes after the stop was initiated.

"[C]onstructive possession of a firearm satisfies the possessory element [of La.R.S. 14:95.1]. Constructive possession exists when the illegal object is subject to the defendant's dominion and control." *State v. Brooks*, 99-478, p. 4 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, 339, *writ denied*, 00-1492 (La. 5/25/01), 792 So.2d 750 (citations omitted).

At trial, the two officers involved in the stop testified about the search and seizure. Sergeant Johnson testified that he was traveling eastbound on Texas Street at 12:51 a.m. when he observed a 1992 Cadillac Seville traveling westbound with a headlight that was not functioning. After stopping the vehicle, he could smell the odor of burnt marijuana on the driver's person. Sergeant Johnson asked if he could search the vehicle, but the driver refused to consent to the search. Sergeant Johnson, also a K-9 dog officer, searched the exterior of the vehicle with his K-9 dog, and the K-9 dog "received a positive odor response on the passenger side door of the vehicle." Based on the dog's positive odor response, the vehicle was subsequently searched.

Sergeant Johnson stated that he was looking for marijuana when he entered the car but did not find any. However, when he opened the rear driver's side door, he

4

found an AK-47 assault rifle underneath a jacket. He immediately ran the serial number on the firearm to see if it was stolen and learned that it was. Sergeant Johnson then arrested the defendant and Mr. Palmer. A photograph of the firearm was entered into evidence.

On cross-examination, Sergeant Johnson testified that he did not take any fingerprints from the weapon and that he did not submit anything to forensics to determine if the defendant or Mr. Palmer had handled the weapon. He also did not determine the ownership of the jacket. Lastly, Sergeant Johnson estimated that he was at the vehicle for about ten minutes before he discovered the weapon.

Detective Taitano, an officer with the Multi-Jurisdictional Drug Task Force of the Natchitoches Parish Sheriff's Department, the Natchitoches City Police, and the Louisiana National Guard, testified that he stopped to assist Sergeant Johnson. When he approached the passenger side of the vehicle, he could smell a strong odor of marijuana coming from the vehicle. He was present when Sergeant Johnson searched the vehicle and seized the firearm.

Detective Taitano stated that he did not handle the weapon and that he was not involved with the firearm. According to him, he was only a witness to the search and seizure. On cross-examination, Detective Taitano confirmed that neither the defendant nor Mr. Palmer admitted ownership of the firearm.

Mr. Palmer, the twenty-two-year-old co-defendant, also testified at trial. Mr. Palmer admitted that he had been convicted of possession of marijuana and cocaine when he was seventeen years of age. He also stated that he was the defendant's second cousin but explained that he only met the defendant approximately one and one-half years prior to trial. According to Mr. Palmer, he and

5

the defendant were at his house smoking marijuana on the night in question. The defendant asked to use his car, and when he returned, the defendant showed him the firearm that was later seized during the stop. Mr. Palmer testified that he and the defendant then sat in his car, smoking "weed" and talking for a while. The defendant then asked him to take him home, and while en route to the defendant's home, the police stopped him because his headlight was out. Mr. Palmer testified that the defendant first had the firearm on his lap but then placed the gun on the backseat when the police officer pulled behind the car. Mr. Palmer stated that he never touched the gun and that he did not know if it was loaded.

Although the defendant correctly asserts that there was no testimony as to who owned the jacket or the firearm and that there were no fingerprints taken from the firearm, Mr. Palmer's testimony was that the defendant had actual possession of the firearm, that the defendant knew the firearm was present in the vehicle, and that he exercised dominion or control over it. Moreover, Mr. Palmer's testimony further negates the defendant's claim that the firearm was concealed and that he could not have seen it when he entered the car.

The appellate court's authority to review questions of fact in a criminal case is limited to the sufficiency evaluation of *Jackson,* 443 U.S. 307, 99 S.Ct. 2781, and does not extend to credibility determinations made by the trier of fact. La.Const. art. 5, § 10(B); *State v. Williams*, 448 So.2d 753 (La.App. 2 Cir. 1984). Within the bounds of rationality, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. *State v. Casey*, 99-23 (La. 1/26/00), 775 So.2d 1022. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a

requisite factual conclusion. *State v. Davis*, 35,298 (La.App. 2 Cir. 12/5/01), 803 So.2d 256, *writ denied*, 02-205 (La. 1/24/03), 836 So.2d 36; *State v. White*, 28,095 (La.App. 2 Cir. 5/8/96), 674 So.2d 1018, *writs denied,* 96-1459 (La. 11/15/96), 682 So.2d 760 and 98-282 (La. 6/26/98), 719 So.2d 1048. In the present case, it was the jury's prerogative to accept or reject Mr. Palmer's uncontradicted testimony. We find no ground to interdict the jury's acceptance of that testimony.

The defendant next argues that the State did not prove that he had prior felony convictions for the crimes of simple burglary, a prohibited felony in La.R.S. 14:95.1, and simple robbery, a specifically listed crime of violence in La.R.S. 14:2(B)(23). The defendant asserts that the State's introduction of the court minutes at trial to establish his prior felony convictions was improper because the minutes were not certified. Notwithstanding the defendant's assertion, our examination of the record shows that the minutes introduced by the State were certified by the Deputy Clerk of the Tenth Judicial District Court on January 26, 2009. Further, the certified minutes indicate that on February 26, 2003, the defendant pled guilty to simple robbery and was sentenced to three years at hard labor, suspended, and two years of supervised probation. The certified minutes also show that on November 12, 2003, the defendant pled guilty to two counts of simple burglary. On this latter conviction, the minutes indicate that the defendant was sentenced to three years at hard labor to run concurrently with the probation revocation proceedings to which he had agreed therein and that he was given credit for nine months already served. Finally, these court minutes reflect that at both these guilty pleas Laura Johnson represented the defendant as his attorney of record.

7

The defendant next attacks the State's use of Ms. Johnson to identify the defendant as the same person who committed the prior felonies. He contends that there was no testimony that Ms. Johnson knew him except for her brief representations. The defendant asserts that she provided no history of her relationship or acquaintance with him, other than she had "represented him before."

As an element of the offense charged, the State bore the burden of proving the existence of a prior felony conviction as required by La.R.S. 14:95.1. It is well established that various methods may be used to carry this burden of proof, such as "testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those in the prison record introduced, or by photographs contained in a duly authenticated record." *State v. Curtis*, 338 So.2d 662, 664 (La.1976).

The record shows Ms. Johnson testified at trial that she represented the defendant during his prior criminal proceedings in 2003 and identified him as being the same Zoran Johnson who entered guilty pleas to the offenses as stated in the minutes for those dates. Accordingly, we find Ms. Johnson identified the defendant as the same person who committed the offenses, as set forth in the certified minutes for February 26, 2003, and November 12, 2003, which the State introduced.

Lastly, the defendant argues that the evidence of the prior convictions was insufficient because it simply showed the date of the pleas and the initial sentences. He contends that the State had to prove the date of completion of the punishment. We disagree.

The record reflects that the defendant's prior convictions were in 2003, a period that is less than ten years prior to his January 26, 2009 conviction herein. Therefore, the evidence established that ten years had not lapsed from the date of

8

completion of his sentence, probation, parole, or suspension of sentence for his prior convictions. *See State v. Hicks*, 98-1231 (La.App. 5 Cir. 3/30/99), 733 So.2d 652 (court can look to record of proceeding for proof that predicate offense fell within ten-year period).

In summation, we find that the State carried its burden of proving the element of a prior conviction for the purposes of La.R.S. 14:95.1. The court minutes show the defendant's guilty pleas to simple robbery and two counts of simple burglary and conclusively show the defendant's prior felony convictions occurred less than ten years prior to his present conviction. Additionally, Ms. Johnson identified the defendant as the same person who pled guilty to those offenses in 2003.

Therefore, viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to convince a rational trier of fact that the State proved beyond a reasonable doubt all of the elements needed to convict the defendant of the crime of possession of a firearm by a convicted felon.

### Illegal Possession of Stolen Firearms

Illegal possession of stolen firearms is proscribed by La.R.S. 14:69.1, which defines the crime as, "the intentional possessing, procuring, receiving, or concealing of a firearm which has been the subject of any robbery or theft <u>under circumstances which indicate that the offender knew **or should have known** that the firearm was the subject of a robbery or theft</u>." (Emphasis added). Based on this statutory provision, the State had to prove that the defendant intentionally possessed a firearm, that the firearm was the subject of robbery or theft, and that he knew or should have known the firearm was the subject of a robbery or theft.

The defendant first contends that the State failed to prove that he possessed the firearm in question. As discussed previously, Mr. Palmer's uncontradicted testimony about the defendant's handling of the AK-47 in the automobile and his relocation of the weapon from the front to the backseat of the vehicle allowed the jury to conclude that the defendant intentionally possessed a firearm. Thus, there is no merit to the defendant's contention that he did not possess the firearm.

The defendant next argues that the State did not prove that he had knowledge the firearm was the subject of a theft. As discussed above, Sergeant Johnson testified that when he ran the serial number on the weapon through the NCIC database, he learned that it had been reported stolen from Jeff's Guns in May of 2007.

Because there is very little jurisprudence involving La.R.S. 14:69.1 and no reported cases involving an evidence sufficiency review, we have looked to La.R.S. 14:69, illegal possession of stolen things, for guidance in determining whether the State proved that the defendant knew or should have known the firearm was stolen. In *State v. Chester*, 97-1001, pp. 2-3 (La. 12/19/97), 707 So.2d 973, 974, the supreme court stated:

> In Louisiana, the "mere possession of stolen property does not create a presumption that the person in possession of the property received it with knowledge that it was stolen by someone else." *State v. Ennis*, 414 So.2d 661, 662 (La.1982); *State v. Nguyen*, 367 So.2d 342, 344 (La.1979); *State v. Walker*, 350 So.2d 176, 178 (La.1977). The state must therefore prove the defendant's guilty knowledge as it must every other essential element of the offense. *Ennis*, 414 So.2d at 662. Nevertheless, jurors may infer the defendant's guilty knowledge from the circumstances of the offense. *See Barnes v. United States*, 412 U.S. 837, 843, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973)[.] ("For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods.").

In *Chester*, 707 So.2d at 973, the supreme court prefaced its discussion of guilty knowledge with the following:

With the question of defendant's guilt turning at trial on his knowledge that the property in his possession had been the subject of a theft, the court of appeal reversed his conviction and sentence for possession of stolen property, La.R.S. 14:69, on grounds that "without additional circumstantial evidence concerning the defendant's acquisition of the [stolen property] . . . the state's proof of the crime is not constitutionally sufficient in this case." *State v. Chester*, 95-1428, p. 5 (La.App. 1st Cir. 3/27/97), 698 So.2d 1065 (unpublished). We granted the state's application for review because the court of appeal's decision appears to conflict with the settled principle of appellate review that "[w]hen a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant[ ] . . . that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville*, 448 So.2d 676, 680 (La.1984).

Our review of the record shows that Jefferson A. Guilliams, Sr., the owner of Jeff's Guns, testified that in May of 2007, an AK-47 assault rifle was stolen from his business. He explained that he had momentarily left the store in the care of his granddaughter and upon his return, a young man and an older person were in the store to buy ammunition for an AK-47. Mr. Guilliams testified that very few people have a weapon that uses that kind of ammunition. After selling the men a box of the ammunition, Mr. Guilliams noticed that his AK-47 was gone. He then realized that someone had taken the gun during his absence from the store. He testified that earlier three young men had been looking around in his store and during that time, one of the young men said, "Well, I'm gonna buy that gun, before the week's over with." Mr. Guilliams then left the store to tend to some business. When he returned, he noticed that the gun was missing.

It cannot be denied there was no direct evidence linking the defendant to the theft of the firearm or establishing how he came into possession of the stolen gun. That fact, however, is not fatal to the defendant's conviction in the present case.

11

"[J]urors may infer the defendant's guilty knowledge from the circumstances of the offense." *Id.* at 973. Moreover, as provided in La.R.S. 14:69.1, the illegal possession of a firearm may be shown if circumstances indicate "that the offender knew **or should have known** that the firearm was the subject of a robbery or theft." (Emphasis added). To this extent, the inference of guilty knowledge arising from the possession of stolen property is generally a much stronger one than the inference the possessor committed the theft. *Cosby v. Jones*, 682 F.2d 1373 (11th Cir. 1982).

In the present case, Mr. Guilliams testified that an AK-47 is an assault rifle that sells for about $600 and that "very few people have a gun that shoots that kind of ammo." This evidence, coupled with the proof that the gun was stolen, was sufficient to allow a rational trier of fact to infer that the defendant knew or should have known the gun was stolen. Accordingly, the jury's conclusion that the defendant knew the firearm was stolen is reasonable and fully supported by the record.

Therefore, viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient to convince a rational trier of fact that the State proved beyond a reasonable doubt all of the elements needed to convict the defendant of the crime of the illegal possession of a stolen firearm.

## EXCESSIVENESS OF SENTENCE

The defendant argues that his sentences are excessive. Because the defendant did not file a motion to reconsider his sentences, La.Code Crim.P. art. 881.1. bars his excessiveness claims. However, in the interest of justice, this court has chosen to review such an assignment as a bare claim of excessiveness. *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552; *State v. Dabney*, 01-1110 (La.App. 3 Cir. 6/25/03), 848 So.2d 784.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The defendant received the minimum possible sentence of ten years for possession of a firearm by a convicted felon. La.R.S. 14:95.1(B). He received the

maximum possible sentence of five years for illegal possession of a stolen firearm. La.R.S. 14:69.1(B)(1).

At sentencing, the trial court stated that it had reviewed the defendant's Presentence Investigation Report. The trial court noted that the defendant was twenty-four years of age and that the present offenses were his third and fourth felonies since 2002. The trial court added:

> I have reviewed the provisions of Article 894.1 of the Code of Criminal Procedure. And under mitigating circumstances, I find that he's a young man, and that's a shame . . . that he's in this situation. But I find the following aggravating circumstances. . . . his criminal history over a six (6) year period . . . four (4) felonies in six (6) years is aggravating. The Legislature is [sic] obviously placed great seriousness on crimes involving firearms, and in particular, Possession of Firearms by convicted felons.

As outlined in *Smith*, the defendant's circumstances weigh heavily in favor of the sentencing court's choice of sentences. The trial court's review of the defendant's criminal history establishes that it did not abuse its discretion by imposing the minimum sentence for conviction of possession of a firearm by a convicted felon. Accordingly, the defendant's sentence for this conviction is affirmed.

As previously noted, the jurisprudence involving illegal possession of a stolen firearm is limited. In *State v. Martin*, 40,150 (La.App. 2 Cir. 9/21/05), 911 So.2d 917, the defendant pled guilty to illegal possession of a stolen firearm and was sentenced to the maximum sentence of five years at hard labor. In that case, the defendant was found in possession of a stolen gun he had purchased from a man who told the defendant that it had been stolen. The trial court found that the defendant's criminal conduct caused serious harm by facilitating the commission of the burglary and that the purchase of stolen items created a market for such items. Also, the trial court found that the defendant did not act under strong provocation, that the victim

14

did not induce or facilitate the crime, and that the defendant could not compensate the victim for the economic and emotional loss he and his family suffered. The sentence was affirmed.

In *State v. Brooks*, 38,963 (La.App. 2 Cir. 9/22/04), 882 So.2d 724, *writ denied*, 04-2634 (La. 2/18/05), 896 So.2d 30, the defendant was originally charged with possession of a firearm by a convicted felon, illegal possession of stolen things, and illegal possession of stolen firearms. After pleading guilty to these charges, he received the maximum sentence on each charge, a total of twenty-two and one-half years. The defendant did not challenge his sentences on appeal; therefore, the trial court's reasons for sentencing are not known.

The defendant correctly asserts that the trial court relied heavily upon his prior criminal history in sentencing him. Nonetheless, he received the minimum possible sentence for possession of a firearm by a convicted felon. Additionally, although he received the maximum sentence for illegal possession of a stolen firearm, the sentence is not out of line with the cited jurisprudence. Moreover, the sentence was ordered to run concurrently with his mandatory sentence for possession of a firearm by a convicted felon. Accordingly, we find that the defendant's sentences are not excessive, and they are affirmed.

### Disposition

The defendant's convictions and sentences are affirmed.

**AFFIRMED.**